# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

John Luscko,

    Plaintiff,

CIVIL ACTION No. 06-3896 (WHW)

Southern Container Corp., Steven Hill
and John Does I-XX, Individually,

    Defendants.

---

## REPLY BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

---

Benjamin A. Karfunkel, Esq.
HERBERT NEW & DAVID W. NEW, P.C.
300 BROADACRES DRIVE, 3rd FLOOR
BLOOMFIELD, NEW JERSEY 07003
(973) 893-9696
Attorneys for Defendants,
Southern Container Corp. and Steven Hill

# TABLE OF CONTENTS

STATEMENT OF FACTS ..... 1

LEGAL ARGUMENT

I.  PLAINTIFF HAS NOT PRODUCED ANY EVIDENCE
    TO SUPPORT HIS CLAIM OF FRAUD. ..... 5

II. PLAINTIFF WAS NOT CONSTRUCTIVLEY DISCHARGED. ..... 7

III. SOUTHERN DID NOT BREACH THE EMPLOYMENT
     AGREEMENT AND HAS NOT ADMITTED ANY SUCH
     BREACH. ..... 8

IV. PLAINTIFF'S THEORY OF BAD MOTIVE IS UNFOUNDED. ..... 11

V.  PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF
    SHOWING AGE DISCRIMINATION. ..... 11

CONCLUSION ..... 16

TABLE OF AUTHORITIES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 252 (1986) .................................................................................. 11

Chatlos Systems, Inc. v. National Cash Register Corp.,
479 F. Supp. 738, 748 (D.N.J. 1979) aff'd in part,
rev'd in part, 635 F. 2d 1081 (3d Cir. 1980) ...................................................... 6

Diaz v. Johnson Matthey, Inc.,
869 F. Supp. 1155, 1165 (D.N.J. 1994) .............................................................. 6

Fakete v. Aetna, Inc.,
308 F. 3d. 335, 339 (3d. Cir. 2002) ................................................................... 14

Ferruggia v. Sharp Elecs. Corp.,
2009 U.S. Dist. Lexis 75464 at *7 (D.N.J. 2009) ............................................. 14

Fuentes v. Perskie,
32 F. 3d 759, 763 (3d. Cir. 1994) ..................................................................... 12

Gross v. FBL Financial Services, Inc.,
129 S. Ct. 2343 (2009) ...................................................................................... 14

Hazen Paper Co. v. Biggins,
507 U.S. 604-610 (1993) .................................................................................. 11

Kapossy v. McGraw-Hill, Inc.,
921 F. Supp. 234, 240 (D.N.J. 1996) ................................................................ 11

Kautz v. Met-Pro Corp.,
412 F. 3d 463, 476 (3d. Cir. 2005) ................................................................... 12

Keller v. Orix Credit Alliance, Inc.,
130 F. 3d 1101, 1108 (3d. Cir. 1997) ............................................................... 12

McConkey v. Aon Corp.,
354 N.J. Super 25, 45-46 (App. Div. 2002),
Cert. denied 175 N.J. 429 (2003) .................................................................. 5, 6

McDevitt v. Bill Good Builders, Inc.,
175 N.J. 519, 528 (2003) .................................................................................. 14

| | |
|---|---|
| McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973) | 12 |
| Medivox Prod., Inc. v. Hoffman-La Roche, Inc., 107 N.J. Super. 47, 55 (Law Div. 1969) | 9 |
| Price Waterhouse v. Hopkins, 490 U.S. 228 (1994) | 13 |
| Roberston v. Allied Signal, Inc., 914 F. 2d 360, 382, n. 12 (ed. Cir. 1990) | 11 |
| Silvestri v. Optus Software, Inc., 175 N.J. 113, 121 (2003) | 9 |
| St. Mary's Honor Ctr. v. Hicks, 519 U.S. 502 (1993) | 13 |
| Winslow v. Corporate Express, 364 N.J. Super 128, 135 (App. Div. 2003) | 7 |
| Yellow Cab Co. v. State, 126 N.J. Super 81 (App. Div. 1973) | 8 |
| N.J.A.C. § 12:56-7.4(a) | 8 |
| N.J.S.A. § 34:11-56(a)(4) | 7 |
| 2000 N.J. Agen Lexis 316 (2000) | 9 |
| Local Civil Rule 56.1 | 1 |

## STATEMENT OF FACTS

Defendant, Southern Container Corp. ("Southern") and Steven Hill ("Hill") hereby adopt the procedural history previously provided to this court in its original moving papers.

In addition, on August 31, 2009, Plaintiff filed his responses to Defendants' Rule 56.1 Statement of Undisputed Facts. Under Local Civil Rule 56.1, an opponent of a summary judgment motion, shall furnish, "a responsive statement of material facts, addressing each paragraph of the movants' statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."[1] Plaintiff's responses to Defendants' Statement of Undisputed Facts ("Plaintiff's Response"), by failure to admit or deny, admit the following:

(a)  Southern's incorporation of a large volume of business from Regal, that was not well organized, over a short period of time, resulted in orders being delivered late and customers having difficulty in contacting Southern's customer service representatives. See Plaintiff's Response to Defendants' Statement of Undisputed Fact ("Plaintiff's response"), par. 14;

(b)  Southern originally planned for a team of employees from each company to work together during the transition period so as to enable Southern to seamlessly operate the former Regal business at the time of closing. Id. at par. 15. In response, Plaintiff supports his "non-answer" based on an anonymous "former customer service

---

[1] In many instances Plaintiff has denied Defendants' Statement of Fact without citing any affidavit or other submitted document. See Plaintiff's Response, paragraphs 10, 11, 13, 14, 23, 26, 27, 28, 31, and 33. Plaintiff's failure to properly reply to Defendants' Statement of Fact should be deemed undisputed for purposes of this motion.

1

representative" who will testify to the contrary. No such person has been identified nor has Plaintiff provided any affidavit or citation to the record in support of such a statement. Id.;

(c) Much of the data Southern required was missing and Southern had problems trying to decipher the files that Regal had provided. Id. at par. 16;

(d) The transition of supplementing the missing data took over six months. Id. at par. 17;

(e) Regal employees were starting to sabotage the plant at Regal because employees were upset that the Regal facility was shutting down. Id. at par. 18;

(f) During the transition period, Southern had its people working six and seven days a week and putting in long hours. Id. at par. 19;

(g) Southern was on the verge of not only losing Regal business and Regal employees, but customers that were with Southern for upwards of 20 years. Id. at par. 20;

(h) Southern had a difficult transition. Id. at par. 22;

(i) Luscko's orders were never treated any differently than orders originated from other salespersons. Id. at par. 25;

(j) Plaintiff performed most of his work outside the office; Id. at par. 24; and

(k) All of the other Regal salespersons, besides Plaintiff, continued in their employment with Southern. Id. at par. 32.

Plaintiff states that he cannot determine which other former Regal salesperson were adversely affected. Id. at par. 21. Plaintiff's response is unbelievable. Plaintiff is well aware of the identity of the former Regal salespersons. See Reply Karfunkel Declaration, dated September 25, 2009 ("Reply Karfunkel Dec."), Exhibit E, page 46.

2

See also Declaration of Benjamin Karfunkel dated June 29, 2009 ("Karfunkel Dec."), Exhibit H, page 9, definition of "salesmen".

In addition, Plaintiff attempts to conjure up a seeming contradiction in Defendants' Statement of Undisputed Facts. Plaintiff believes that unexpected problems that Southern encountered during the transition from Regal, which resulted in orders being mishandled, was contradicted by Defendants' statement that Southern, during the transition period, was focused on its existing customer base. See Plaintiff's response, pars. 13 and 29. Plaintiff has inappropriately cited the testimony of Tim Kelly, by taking his statements out of context. In fact, upon review of his testimony, the "existing customer base" after the transition period, <u>included</u> all the Regal accounts. Southern's focus was on existing customers, including Regal customers, not prospective clients. See Karfunkel Dec., Exhibit E, pages 62-63.

The most glaring material fact, is Plaintiff's admission that Regal employees were starting to sabotage the plant at Regal because employees were upset that the Regal facility was shutting down. See Plaintiff's response, par. 18. It is obvious, to any reasonable fact finder, that Southern would not have the expected a sabotage of its plant during the shut down phase. This admission alone, would give rise to all the difficulties that Southern encountered following the transition from Regal to Southern.

In addition, Plaintiff states that he tried valiantly to address the business issues in question, but that Hill refused to return Plaintiff's calls. Interestingly, Luscko never states that he complained to any of his managers or to any of the other officers of Southern. Instead, he alleges to have telephoned Hill, a person with whom he never saw during his entire tenure at Southern, other than the day he signed the Employment Agreement. See Reply Karfunkel Dec., Exhibit A, page 40 and Exhibit B, pages 60-61.

3

Finally, Plaintiff claims to be without information concerning whether other Regal salespersons continued in employment with Southern. See Plaintiff's response, par. 32. In fact, Plaintiff deposed Abbie Hoffman, who testified that she continued as a salesperson after the Regal acquisition by Southern and that the other salesmen were unhappy because deliveries were late. See Karfunkel Dec., Exhibit C, page 25.

In sum, Plaintiff has hid behind his own self-serving statements in order to raise, at most, a credibility issue. Plaintiff has not brought forth any supporting affidavits or supporting documentation to support his claims or denials. As such, those statements shall be deemed admissions for purposes of this motion.

## LEGAL ARGUMENT

### I. PLAINTIFF HAS NOT PRODUCED ANY EVIDENCE TO SUPPORT HIS CLAIM OF FRAUD.

Plaintiff relies on purportedly two false statements of present fact that were allegedly made by Hill at the time Luscko entered into the Employment Agreement. Hill allegedly told Luscko that Regal's accounts were "good" accounts that were "important" to Southern. See Opposition Brief, page 23. Plaintiff believes that these statements were false when made because Southern allegedly made little or no effort to keep the accounts after the acquisition. Id. He offers no evidence to support his beliefs, and his statement is contrary to his admission that Southern had problems servicing its customers. See Plaintiff's Response par. 18. Plaintiff's beliefs are not enough to defeat summary judgment.

In order to prevail on a fraud in the inducement claim, a plaintiff is required to come forward with clear and convincing proof. See McConkey v. Aon Corp., 354 N.J. Super 25, 45-46 (App. Div. 2002), cert. denied 175 N.J. 429 (2003). After a lengthy citation from Luscko's deposition, Plaintiff argues that "the question of whether Hill knowingly made false statements to Luscko about the present value and the importance of his accounts to Southern be resolved at trial." See Opposition Brief, page 27. At trial, Plaintiff anticipates that Hill and Southern, "will never directly admit that they do not intend to adequately serve Regal's accounts." Id. at page 28. Luscko has not explained how he intends to prove that Southern, despite Hill's statements, had no intention of retaining Regal's business.

Statements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, does not constitute misrepresentations, even though they may turn out to be wrong." Chatlos Systems, Inc.v .National Cash Register Corp., 479 F. Supp. 738, 748- (D.N.J. 1979), aff'd in part, rev'd in part, 635 F. 2d 1081 (3d Cir. 1980). Similarly, statements that can be categorized as "puffery" or "vague and ill-defined opinions" are not assurances of fact and thus do not constitute misrepresentations. Diaz v. Johnson Matthey, Inc., 869 F. Supp. 1155, 1165 (D.N.J. 1994).

McConkey, cited by Plaintiff, does not support his position. In that case, the prospective employee was lured away from his position, and accepted a position with a new employer, on the assurance that the new employer would not be sold. This turned out to be false. The court found that the new employer had, in fact, discussed selling the company months before McConkey was hired and that as a result, a reasonable jury could conclude that the statements made to McConkey were material misrepresentations about present facts. Similarly, the cases cited by the McConkey court all rely upon some actual evidence that the statement made by prospective employers were knowingly false when they were made. Id. at 46-47. There is no similar type evidence in this case.

There is no dispute that Southern experienced significant problems after its acquisition of Regal. In fact, Plaintiff has admitted that Regal's employees "were starting to sabotage the plant at Regal because employees were upset that the Regal facility was shutting down". See Plaintiff's Response, par. 18. Even assuming that Hill's statements were more than mere puffery, and were actually assurances, Plaintiff has not come forward with any admissible evidence, and certainly no clear and convincing proof, that Hill made his statements knowing them to be false.

6

Without any evidence that Hill made knowingly false statements with the intention of inducing Plaintiff to sign the Employment Agreement, Plaintiff can not prove the elements necessary for a fraud in the inducement claim. As a result, Defendants are entitled to summary judgment on this claim.

## II.   PLAINTIFF WAS NOT CONSTRUCTIVELY DISCHARGED.

Plaintiff's Second Cause of Action is based on his alleged constructive discharge from his employment. When specifically asked which conditions were intolerable to him, Plaintiff cited the fact that he received phone calls all day long regarding missed deliveries and quality problems, failed to receive responses to his inquiries by Southern, had problems with credit holds and had customers calling him at night. See Karfunkel Dec., Exhibit D, page 77. At no time during his employment did Luscko claim to make a minimum wage claim against Southern. At no point during discovery or in pleadings, did Plaintiff ever make a wage payment law claim.

Assuming arguendo, that this Court accepts Plaintiff's novel interpretation of this statute, the statute itself provides certain exemptions to this unreasonable wage claim.[2] N.J.S.A. § 34:11-56(a)(4) provides exemptions to the minimum wage. Among the wage rate exemptions are "persons employed as salesmen of motor vehicles, or to persons employed as outside salesmen as such terms shall be defined and delimited in regulations adopted by the commissioner" (emphasis added). While no definition of an "outside sales person" is provided under this specific statute, the New Jersey Administrative Code has defined "outside sales person" in the context of exemptions from overtime wages. See

---

[2] Plaintiffs citation to Winslow v. Corporate Express, 364 N.J. Super 128, 135 (App. Div. 2003) is inapposite. In Winslow, the question presented was whether an employee had a viable cause of action against an employer for reducing his compensation by changing the method of calculating the sales commission without prior notice. No such claim has been alleged in this action, and therefore, its citation is irrelevant to this matter.

7

N.J.A.C. § 12:56-7.4(a). An outside sales persons is defined as any employee who is employed for the purpose of and who is customarily and regularly engaged away from his or her employer's place or place of business and: (1) making sales, or (2) obtaining orders or contracts for services or for the use of facilities which a consideration would be paid by the client or customer. See also 2000 N.J. Agen Lexis 316 (2000) and Yellow Cab Co. v. State, 126 N.J. Super 81 (App. Div. 1973). Therefore, Plaintiff's claim for constructive discharge based on an "unreasonable and oppressive wage" fails. See Opposition Brief, page 31.

As to Plaintiff's previous "reasons" for discharge, the Employment Agreement did not require a draw account. In addition, Luscko admitted that he was overpaid. Therefore, any draw previously provided to Plaintiff was appropriately adjusted, resulting in a negative draw as of March 2006. Nowhere in Plaintiff's Opposition Brief does he discuss the "intolerable conditions" described in his deposition.[3] Faced with the prospect of having this cause of action dismissed, Plaintiff has asserted a "new" reason for unreasonable wage claims, which are unfounded in statute.

### III. SOUTHERN DID NOT BREACH THE EMPLOYMENT AGREEMENT AND HAS NOT ADMITTED ANY SUCH BREACH.

Plaintiff argues that the "object of the Employment Contract" was breached. This argument is more appropriately made under Count IV, the alleged breach of the implied covenant of a good faith, as Plaintiff has still not identified any specific portion of the Agreement that he believes has been breached.

---

[3] In fact, Abbie Hoffman testified that "[a]ll the salesmen were extremely unhappy" and that "[i]t was truly a nightmare". See Karfunkel Dec., Exhibit C, page 25. Despite all this, Luscko was the only salesman to find the circumstances so intolerable that he quit. See Karfunkel Dec., Exhibit F, page 172.

8

Plaintiff asserts that Defendants missed a mark in their "selective reliance in some of the contracts literal terms" but Plaintiff himself fails to address <u>any</u> term in the contract which was breached other than to state that the contract, as a whole, was "obliterated". These allegations, with no evidentiary support offered in Plaintiff's opposition, is reason enough for the Court to dismiss this claim.

As stated in <u>Medivox Prod., Inc. v. Hoffman-La Roche, Inc.</u>, 107 N.J. Super. 47, 55 (Law Div. 1969), the written words of a contract define the perimeters within which the understanding of the parties must be found. While performance to the sole and final satisfaction of another is not readily implied, in the absence of plain language, certain contracts do not follow this general rule. "Where the contract in which one party agrees to perform to the satisfaction of the other involves matters of fancy, taste, sensibility or **judgment** of the other party, such matters must reasonably be considered elements of predominant importance in the performance. In such contracts, the party agreeing to perform to the satisfaction of the other party renders the other the sole judge of his satisfaction, is ordinarily without regard to the justice or reasonableness of his decision, in a court or jury cannot say that such party should have been satisfied where he asserts that he is not." Id. at 63 (emphasis in bold). See also <u>Silvestri v. Optus Software, Inc.</u>, 175 N.J. 113, 121 (2003) (noting that agreements from to perform in manner that is to the satisfaction of another are a common form of enforceable contracts and the standard for satisfaction contracts are interpreted on a subjective basis, with the satisfaction dependent upon the personal, honest evaluation of the party to be satisfied.)

In this case, Plaintiff has still not identified any specific contractual term which was allegedly breached by Defendants. Instead, he claims that the entire contract was breached because he did not obtain his alleged legitimate expectation. See Opposition

9

Brief, page 33. To support this argument, Luscko embellishes the actual facts by interpreting a course of events as a "complete refusal to support Luscko's efforts to sell product to his former Regal customers." Id. Luscko contends that he did not receive proper commissions on certain accounts without identifying those accounts and without any proof, despite ample documentation provided by the Defendants, that he in fact was paid all of the commissions he was entitled to receive.

The Employment Agreement is clear as to its terms. See Karfunkel Dec., Exhibit I. Southern was clear, in the terms of the Agreement, that Luscko's authority and responsibility was limited to the solicitation of orders. All orders were "subject to acceptance or rejection by employer at its home office." Id. at par. 2(c). Furthermore, Southern had "the absolute discretion to refuse to accept any orders or to ship the products described therein, to make such allowances and judgments and accept returns in respect of any shipments." Id. Luscko's rights, by the terms of the Agreement, were specifically defined, but were open to negotiation - prior to his execution of the Agreement. Luscko never read his Employment Agreement, did not attempt to negotiate its terms, and did not have it reviewed by counsel, despite Hill's suggestion. See Karfunkel Dec, Exhibit D, page 83 an Exhibit G, page 32. Without citing any specific breach[4], Plaintiff has failed to bring a reasonable inference of a breach of contract claim.[5]

---

[4] Plaintiff's allegation of a total "obliteration" is more appropriately addressed in his cause of action for breach of implied covenant of good faith, discussed in Par. IV below.

[5] Plaintiff also believes that Southern had "admitted" to a breach, strikingly without any reference to the record and only as a heading to his legal argument. See Plaintiff's Opposition Brief, pages 31 and 33. It is assumed that the "admission" comes from Defendants' Statement of Undisputed Facts, pars. 13 and 29, in which Defendants admit to unexpected problems that it encountered during the transition from Regal, which resulted in orders being mishandled and being focused on its existing customer base, as opposed to prospective customers. See also Karfunkel Dec., Exhibit E, pages 62-63. This "admission" does not relate, in any way, to Plaintiff's breach of contract claim.

## IV.  PLAINTIFF'S THEORY OF BAD MOTIVE IS UNFOUNDED.

Plaintiff argues that a factual issue exists as to whether Southern breached the contract's implied covenant of good faith. Plaintiff's argument does not cite to any specific evidence of ill or bad motive that resulted in Luscko being unable to perform under the Employment Agreement. No reasonable factfinder could possibly conclude that Southern negotiated to include Luscko as part of its acquisition of Regal, expressly made the hiring of Regal's salespersons a condition to Southern's obligation to close, and then voluntarily enter into an Employment Agreement with Plaintiff, all for the purpose of denying Plaintiff the fruits of his contract. The circumstantial evidence, if any, leaves no doubt that Southern did not breach the implied terms of the contract.

## V.  PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF SHOWING AGE DISCRIMINATION.

A non-movant's inferences based upon speculation, rumor or conjecture do not create a material fact dispute sufficient to defeat the entry of summary judgment. See Roberston v. Allied Signal, Inc., 914 F. 2d 360, 382, n. 12 (3d. Cir. 1990). The non-movant must show more than "the mere existence of a scintilla of evidence" for elements on which he bears the burden of production. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). When a Plaintiff alleges that he has been subject to disparate treatment because of his age, liability depends upon whether the Plaintiff's age actually played a role in the decision-making process and had a determinative influence on the outcome. Hazen Paper Co. v. Biggins, 507 U.S. 604-610 (1993).[6]

---

[6] As noted in Kapossy v. McGraw-Hill, Inc., 921 F. Supp. 234, 240 (D.N.J. 1996), New Jersey looks to the federal Age Discrimination in Employment Act (ADEA) in applying the New Jersey Law Against Discrimination (NJLAD) for relevant standards in evaluating a claim.

11

In the present case, there is no direct evidence that Plaintiff suffered an adverse employment action because of his age. Accordingly, he must proceed with indirect proof of age discrimination. In such cases, the courts apply the familiar burden-shifting test formulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Under this test, the Plaintiff must establish a prima facia case, and if so, an inference then arises, and the burden of production shifts to the Defendant. In the second step, the Defendant must articulate a legitimate business reason for their actions. See Keller v. Orix Credit Alliance, Inc., 130 F. 3d 1101, 1108 (3d. Cir. 1997) (en banc)(citations omitted). Defendants must offer evidence that it is sufficient, if believed, to support a finding that it had a non-discriminatory reason for its action. If the Defendant satisfies this burden, then, in the third step, the Plaintiff must submit evidence to prove that each of the employer's proffered reasons was a pre-text for impermissible discrimination. In order to show pretext, the Plaintiff must submit evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believed that invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions." Fuentes v. Perskie, 32 F. 3d 759, 763 (3d. Cir. 1994).

A Plaintiff must discredit each of the employer's reasons for its actions. Kautz v. Met-Pro Corp., 412 F. 3d 463, 476 (3d. Cir. 2005). Moreover, a plaintiff cannot discredit the employer's proffered reason merely by showing that the adverse employment decision was mistaken, wrong, imprudent, unfair, or even incompetent. Fuentes at 765. Rather, plaintiffs must demonstrate such weaknesses, implausibilities, inconsistencies, incoherence or contradictions and the reasons articulated by the employer that a jury reasonably could find them unworthy of credence. Id. The ultimate burden of proving

12

that Defendants engaged in intentional discrimination remains at all times on the Plaintiff. St. Mary's Honor Ctr. v. Hicks, 519 U.S. 502 (1993).

In this case, Plaintiff asserted an age discrimination cause of action based on Southern's alleged "disparate impact on older workers" and Southern's alleged actions of squeezing out and replacing them with younger workers. See Karfunkel Dec., Exhibit A, pars. 51 and 52. Specifically, Plaintiff alleges that he suffered "from an unfair and illegal disparate impact" because, as "an older worker at a high rate of compensation, he was denied sales support, so that younger workers earning less could sell to his former Regal customers". Id. at par. 53.

In support of this allegation, Plaintiff refers to an alleged statement made by Hill when he allegedly asked Plaintiff, prior to his signing the Employment Agreement, "if plaintiff was getting too old to continue in his position." See Karfunkel Dec., Exhibit L, response 21. It is Plaintiff's theory that Southern did not want to pay Plaintiff a 5% commission, as demonstrated by their refusal to hire him a year before they purchased Regal.

Plaintiff argues that Hill's alleged statement amounts to "direct evidence" which allows a shifting of the burden of persuasion to the employer. Luscko's argument fails for several reasons. Under the test enunciated in Price Waterhouse v. Hopkins, 490 U.S. 228 (1994), a plaintiff must produce evidence that the employer placed substantial reliance on a proscribed discriminatory factor in making its decision to take the adverse employment action in order to shift the burden of persuasion to Southern. New Jersey, in determining whether an adopted admission by way of a head nod could meet the direct-evidence test, looks to the overall strength of evidence under the totality of the circumstances, rather than focusing exclusively on the directness of the proffered evidence itself. This

13

approach, applied by Fakete v. Aetna, Inc., 308 F. 3d. 335, 339 (3d. Cir. 2002) requires a Court to consider whether a statement made by a decision maker associated with the decision making process actually bore on the employment decision at issue and communicated proscribed animus. See McDevitt v. Bill Good Builders, Inc., 175 N.J. 519, 528 (2003).

In this case, Plaintiff has failed to even make a prima facia case. Plaintiff has failed to show any disparate treatment to older employees, that his accounts were divided amongst younger salespersons, or any age-related treatment of Plaintiff in an attempt to relieve Southern of paying 5% commissions. In fact, after Plaintiff quit, his accounts were divided amongst the remaining former Regal salespersons, and no younger salesperson was hired to take over Plaintiff's accounts. Plaintiff's personal beliefs or theories, that Southern never intended to pay him a 5% commission, without any evidence, fails to make a prima facie case.

In a desperate attempt without any explanation, Plaintiff beseeches the Court to relax the elements of the McDonald Douglass test based on a mixed motive. Plaintiff has not explained what mixed motive or unlawful motive was an alleged substantial motivating factor in the alleged disparate treatment of Plaintiff. In Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343 (2009), the Supreme Court held that the burden of persuasion does not shift to the defendant, even in an alleged mixed motive claim. The Third Circuit, even post-Gross, had continued to apply the McDonnell Douglas framework at the summary judgment stage. See Ferruggia v. Sharp Elecs. Corp., 2009 U.S. Dist. Lexis 75464 at *7 (D.N.J. 2009).

Plaintiff has failed to produce any evidence that older workers were being "squeezed out" or replaced with younger workers who were paid less. See Karfunkel

14

Dec., Exhibit A, par. 52. Plaintiff has also failed to produce any evidence that treatment towards him was disparate as to other employees at Southern or that he was denied his 5% commission on any sale. To the contrary, the evidence confirms that he was paid the 5% commission on those sales for which he was entitled to receive such a commission. In addition, Defendants have provided ample reasons why it had difficulty with filling orders after acquiring Regal's assets and that the difficulty was not limited to sales made by Plaintiff. Without proof of disparate treatment and Plaintiff's failure to make a prima facia case, Plaintiff's age discrimination cause of action must be dismissed.

## **CONCLUSION**

For all the foregoing reasons, based upon the authority cited herein, it is respectfully requested that this Court enter Summary Judgment on behalf of Defendants on all counts.

                                          HERBERT NEW AND DAVID W. NEW, P.C.
                                        Attorney for Defendants

Dated: September 25, 2009          By: _____
                                          BENJAMIN A. KARFUNKEL, ESQ.

16