**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOHN LUSCKO, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 06-3896 (WHW) |
| | : | |
| SOUTHERN CONTAINER CORP., | : | |
| STEVEN HILL and JOHN DOES I-XX, | : | |
| INDIVIDUALLY, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**Walls, Senior District Judge**

Defendants, Southern Container Corp. ("Southern") and Steven Hill ("Hill"), move for summary judgment seeking dismissal of the claims asserted against them by Plaintiff, John Luscko ("Luscko"), in this action. The Court heard oral argument on December 8, 2009. Defendants' motion for summary judgment is granted. The claims asserted against Defendants are dismissed with prejudice.

### FACTS AND PROCEDURAL HISTORY

Plaintiff Luscko is a salesperson in the box industry. He joined Regal Corrugated Box Co., Inc. ("Regal") in 1989. At Regal, he received a five percent commission on his sales. Plaintiff states that his total sales at Regal ultimately reached $5.5 million per year, yielding him commissions of $250,000 per year. (Plaintiff's Responses to Defendants' Statement of Undisputed Facts dated Aug. 31, 2000 ("Pl. Resp.") ¶¶ 22, 57).)

NOT FOR PUBLICATION

In 2004, Regal's founder died suddenly, and Luscko explored new employment opportunities. He interviewed for a job with Defendant Southern. Plaintiff claims that the negotiations ended when Southern refused to pay him a five percent commission rate on sales. Plaintiff says that Southern's representatives told him that they would never pay a salesperson a five percent commission rate. (Pl. Resp. ¶ 35.)

In May 2005, Regal and Defendant Southern entered into an Asset Purchase Agreement. Southern agreed to purchase Regal's business and to make future payments to Regal's principals based on a percentage of sales revenues that Southern would generate from Regal's customers. The Asset Purchase Agreement required Southern to enter into employment agreements with most Regal salespeople, including Luscko. (Asset Purchase Agreement ¶ 6(a)(viii).)

On May 10, 2005, Southern and Luscko entered into an employment agreement (the "Agreement") establishing the basic terms for Lusko's employment at Southern. Luscko signed every page of the Agreement. Luscko states that he did not read the Agreement at any point before signing it or anytime while working at Southern. On July 11, 2005, the sale between Regal and Southern closed, and Luscko began his employment at Southern.

The Agreement provided that Luscko would be based out of Southern's Dayton, New Jersey or Lancaster, Pennsylvania offices. (Agreement ¶ 2(a).) The Agreement stated that Luscko's authority and responsibility were "limited to the solicitation for orders" for sale of products in compliance with Southern's policies. (Agreement ¶ 2(b).) The Agreement established that Southern would have the "absolute discretion to refuse to accept any orders or to

-2-

NOT FOR PUBLICATION

ship the Products described therein, and to make such allowances and adjustments and accept

returns in respect of any shipments." (Id.)  The Agreement provided that Southern would pay

Luscko a commission rate of five percent on the Regal accounts that Luscko had been servicing

and in accordance with a separate schedule for other accounts.  (Agreement ¶ 5.1.)

Defendants acknowledge that Defendant Hill, an Executive Vice President and

principal of Southern, told Luscko and other salespeople before they signed their employment

agreements that "it was going to be a smooth transition."  (Def. Rule 56.1 Statement of

Undisputed Facts ("Def. St.") ¶ 8.)  Defendants also acknowledge that Hill spoke to Luscko in a

"semi-private" conversation and said that things "for him ought to be better with Southern than

they were with Regal."  (Def. St. ¶ 9.)  Plaintiff alleges that Hill also induced him to sign the

contract by telling him:  "You'll get all the benefits that you presently have with Regal.  You'll

get 5 percent commission on all accounts that you were selling at Regal today. . . . I'll personally

take care of you.  You'll be treated exactly the same way that you were treated at Regal.  If you

ever have a problem, call my office and I'll straighten it out."  (Pl. Opp. at 7 (quoting Luscko

Dep. at 81, 87).)  Plaintiff claims that, around the time he signed the Agreement, Hill asked him

if he felt too old to sustain his level of productivity.  (Pl. Resp. ¶ 39.)

Southern's takeover of Regal's business did not go smoothly.  After Southern

acquired Regal, Luscko's sales and earned commissions significantly declined.  Plaintiff claims

that his sales dropped from $5.5 million per year at the time Southern acquired Regal in July

2005 (yielding him commissions of about $250,000 per year) to $400,000 when Luscko left

Southern in April 2006 (yielding him commissions of about $20,000).  (Pl. Resp. ¶¶ 22, 57.)

-3-

NOT FOR PUBLICATION

Plaintiff states that he lost 35 accounts and $6 million in generated sales revenues within six months of joining Southern.  (Pl. Resp. ¶ 40.)

Defendants contend that Luscko's business suffered after the takeover because the transition from Regal to Southern encountered unexpected problems including a discovery that Regal's large business was very poorly organized (marked by gaps in files and customer data) and sabotage at Regal's plant by Regal employees upset about the sale.  (Def. St. ¶¶ 13-18.) Defendants contend that, although Southern employees worked long hours during the transition period, the unexpected transition difficulties caused orders to be delivered late and mishandled in processing, and resulted in customers having trouble contacting Southern's customer service representatives.  (Def. St. ¶¶ 13-14.)  Defendants claim that all of the former Regal salespeople, including but not limited to Luscko, were adversely affected, as were several other long-time Southern salespeople.  (Def. St. ¶ 21.)  Defendants contend that Luscko's orders were not treated differently from those of other salespeople.  (Def. St. ¶ 25.)  Defendants say that, as a result of the transition difficulties, Southern was in danger of losing both Regal and long-time Southern customers.  (Def. St. ¶ 20.)  )  Defendants assert that Luscko never complained to Southern's management about his situation or gave Southern an opportunity to address his needs. (Def. St. ¶ 23.)  Defendants acknowledge that Southern rejected several new accounts that Luscko attempted to obtain, but contends that they were rejected for legitimate business reasons.  (Def. St. ¶ 27.)

By contrast, Plaintiff alleges that Southern intentionally subverted his sales efforts after acquiring Regal.  Plaintiff claims that his efforts to originate new business were thwarted for "pre-textual or non-existent" reasons" and that Southern refused any new business that

-4-

NOT FOR PUBLICATION

originated from him.  (Pl. Resp. ¶¶ 41, 49.)  Plaintiff claims that Southern often failed to enter or

process his customers' orders, would not ship products to his customers, delayed shipments, sent

wrong shipments, ignored quality assurance issues, and never answered his customers' phone

calls.  (Pl. Resp. ¶  50.)  Plaintiff also alleges that Southern set artificial and onerous credit terms

for his customers, converted several of his accounts to house accounts (taking away his

commissions), moved his home office to Deer Park, New York (giving him a three hour

commute each way), and assigned a very unqualified customer service representative to assist

him..  (Pl. Resp. ¶¶ 23, 44, 50.) Plaintiff further alleges that Southern faked its "on time" delivery

reports and that records of customer complaints were altered even after he left Southern.  (Pl.

Resp. ¶¶ 42-43.)   Plaintiff states that he called Hill to address these issues, but that Hill would

not return his calls.  (Pl. Resp. ¶¶ 23, 50.)   Plaintiff also says that his immediate supervisor

suggested to a customer that Plaintiff stored pornographic materials on his computer.  (Pl. Resp.

¶ 56.)

    Luscko left Southern on April 19, 2006.  Plaintiff contends that he was forced to

leave because Southern destroyed his book of business.  (Pl. Resp. ¶ 31.)  Defendants note that

all other Regal salespeople continued their employment at Southern, and claim that Luscko quit

without providing any notice or giving Southern a chance to solve his problems.  (Def. St. ¶¶ 31-

32.)  Defendants maintain that Luscko's age was never discussed or raised as an issue regarding

his employment.  (Def. St. ¶ 33.)

    On June 27, 2006, Plaintiff filed this lawsuit against Defendants.  Plaintiff brings

five counts:  (1) fraud in the inducement to contract; (2) constructive discharge; (3) breach of

NOT FOR PUBLICATION

contract; (4) breach of implied contractual covenants of good faith and fair dealing; and (5) age

discrimination in violation of New Jersey law.  Defendants now move for summary judgment

and ask the Court to dismiss all counts with prejudice.

## **STANDARD OF REVIEW**

Summary judgment is appropriate where the moving party establishes that "there

is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c).  A factual dispute between the parties will not defeat a motion for

summary judgment unless it is both genuine and material.  See Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 247-48 (1986).  A factual dispute is genuine if a reasonable jury could return a

verdict for the non-movant and it is material if, under the substantive law, it would affect the

outcome of the suit.  See id. at 248.  The moving party must show that if the evidentiary material

of record were reduced to admissible evidence in court, it would be insufficient to permit the

non-moving party to carry its burden of proof.  See Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts in question."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  To survive a

motion for summary judgment, a nonmovant must present more than a mere scintilla of evidence

in his favor.  Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  The opposing

party must set forth specific facts showing a genuine issue for trial and may not rest upon the

mere allegations or denials of its pleadings.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir.

2001).  At the summary judgment stage the court's function is not to weigh the evidence and

-6-

NOT FOR PUBLICATION

determine the truth of the matter, but rather to determine whether there is a genuine issue for

trial.  See Anderson, 477 U.S. at 249.  In doing so, the court must construe the facts and

inferences in the light most favorable to the non-moving party.  Curley v. Klem, 298 F.3d 271,

277 (3d Cir. 2002).

## DISCUSSION

I.      **Count One:  Fraud in the Inducement to Contract**

      A.      Legal Standard

           To prevail on a claim of fraud in the inducement to contract, New Jersey law

requires a plaintiff to show that a defendant (1) "made a misrepresentation, (2) as to a material

fact, (3) which was false, (4) known to be false by [the defendant] at the time it was made,

(5) made for the purpose of inducing [the plaintiff] to rely on it, (6) and [the plaintiff] did

actually and reasonably rely upon the misrepresentation, (7) [the plaintiff] was not aware of the

falsity of the misrepresentation, and (8) [the plaintiff] suffered injury as a result."  Ramada

Franchise Sys., Inc. v. Polmere Lodging Corp., No. 98-2909, 1999 U.S. Dist. LEXIS 23435, at *7

(D.N.J. July 30, 1999) (citing Lightning Lube v. Witco Corp., 4 F.3d 1153, 1182 (3d Cir. 1993)).

See also Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619 (1981)).  Plaintiffs seeking

monetary damages must also show that a defendant acted with scienter.  Lighting Lube, 4 F.3d at

1182.[1]

---

      [1]      In Lightning Lube, the Third Circuit held that New Jersey law requires each
element of a claim for legal fraud to be proven by a preponderance of evidence.  Id. at 1182.  But
this standard has been questioned and is no longer applied by most New Jersey courts.  See
Lithuanian Commerce Corp. v. Sara Lee Hosiery, 214 F. Supp. 2d 453, 457 (D.N.J. 2002) ("The
weight of authority supports the conclusion that claims of legal fraud in New Jersey must be

NOT FOR PUBLICATION

The "key factor" in fraud in the inducement to contract claims is that the alleged misstatement "must be a misrepresentation of a fact as it existed at the time of the misrepresentation or at some time prior to the misrepresentation." Ramada, 1999 U.S. Dist. LEXIS 23435, at *7 (citing Lo Bosco v. Kure Engineering Ltd., 891 F. Supp. 1020, 1031 (D.N.J. 1995) and Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 51-52 (1984)).  Fraud claims generally cannot be predicated on promises to do something in the future.  Lo Bosco, 891 F. Supp. at 1031 (citing Anderson v. Modica, 4 N.J. 383, 391-92 (1950)).

Where a party knows at the time of making a promise that it has "no intention" to fulfill it, the promise can give rise to an action for fraud.  Mallon v. Prudential Property & Casualty Ins. Co., 688 F. Supp. 997, 1008 (D.N.J. 1988);  Notch View Assocs. v. Smith, 260 N.J. Super. 190, 203 (Law Div. 1992).  The intent to not fulfill a promise "may be derived from circumstantial evidence such as:  the recklessness or implausibility of the statement in light of later events; showing that the promisor's intentions were dependent upon contingencies known only to the promisor; or simply from evidence indicating that the promisor would not or could not fulfill the promise."  Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 395 (1989) (citing Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J. Super. 369, 381 (App. Div.

proven by clear and convincing evidence.  The Third Circuit's holding in Lightning Lube that the preponderance of the evidence standard applies to such claims has been undermined by several lines of authority which have developed since the filing of that decision in 1993.") (citing Gennari v. Weichert Co. Realtors, 148 N.J. 582 (1997) and In re Resorts Int'l, Inc., 181 F.3d 505 (3d Cir. 1999)).  See also Angrisani v. Capital Access Network, Inc., 175 Fed. Appx. 554, 556 (3d Cir. 2006) (stating, in a non-precedential Third Circuit opinion, that the elements of common law fraud must be proven by clear and convincing evidence).  Here, under either standard, Plaintiff's claim for fraud in the inducement of the contract cannot survive summary judgment.

**NOT FOR PUBLICATION**

1960)).  Plaintiffs cannot meet their burden of showing that a promise was fraudulent when made simply by showing that a promise was not kept.  See Notch View Assocs., 260 N.J. Super. at 203 ("Mere non-performance is insufficient to show that the promisor had no intention of performing.").  The alleged misstatements that induced a party to enter a contract must "go beyond" a promisor's hopes that project will succeed.  See Atlantic City Assocs., 2007 U.S. Dist. LEXIS 72649, at *18 ("The allegations . . . go beyond how [the promisor] hoped the project would proceed and provide that [the promisor] made misrepresentations about its ability to organize and fund the project, the amount of leased space at the time of signing the contract and the role of [the defendant] in obtaining permits.").

    B.    <u>Analysis</u>

        Plaintiff argues that "the question of whether Hill knowingly made false statement to Luscko about the present value and importance of his accounts to Southern" is a fact-dependent inquiry that must be resolved at trial.  (Pl. Opp. at 27.)  Plaintiff also argues that "even if Hill's statements constituted facts that were to occur in the future, summary judgment is inappropriate because factual issues and credibility determinations must be made about whether Hill and Southern truly intended to honor their commitments or whether they simply said whatever was expedient to complete the acquisition and eliminate Regal as a competitor.  They will never directly admit that they did not intend to adequately serve Regal's accounts."  (Pl. Opp. at 27-28.)  Plaintiff argues that "Southern was not interested in retaining Regal's business. It merely eliminated Regal as a competitor and drove Luscko out of the company, thereby

**NOT FOR PUBLICATION**

reducing its future payment obligations to Regal's former principals and saving any further disruption to its preferred means of compensating its sales staff."  (Pl. Opp. at 12.)

   To support his allegations, Plaintiff primarily relies on his own deposition testimony in this action.  <u>See, e.g.</u>, Opp. at 26 ("I would get phone calls all day long at home and at night of missed deliveries, quality problems, and no answers from anybody at Southern. Nobody spoke to my customers.  I couldn't get answers. . . . Plants were shut down, trucks were missing, they were on credit hold.  You name it, it happened." (quoting Luscko Dep. at 20-23, 76-79).)  In addition, Plaintiff claims that Southern's sales manager at its Deer Park office told Regal's former principal, Abby Hoffman, that Southern had "dropped the ball" on Luscko's accounts.  (Pl. Opp. at 16.)   Plaintiff also emphasizes that Defendants have admitted that, during the transition period, Southern was focused on its own customer base.[2]  (Pl. Resp. ¶ 28.)  Plaintiff argues that this admission shows that Southern was never interested in supporting his former Regal accounts and only acquired Regal to continue "its practice of buying competitors to consolidate its market presence."  (Pl. Opp. at 3.)

   Conceding that Hill told Luscko that "it would be a smooth transition" and "things would be better for him" at Southern than at Regal, Defendants claim that Southern and Hill "intended to make good on their word."   (Def. St. ¶¶ 9-10.)  They assert that "Luscko has failed to prove that there were actual misrepresentations, the starting element upon which the entire

---

[2]  Plaintiff refers to the following statement by Defendants:  "With all the difficulties, during the transition period, Southern was focused on its existing customer base." (Def. St. ¶ 29.)  Defendants contend that Plaintiff is taking this statement out of context and that it actually means that "Southern's focus was on existing customers, including Regal customers, not prospective accounts."  (Def. Reply Br. at 3.)

**NOT FOR PUBLICATION**

claim is based upon.  Even if false misrepresentations were made, the facts demonstrate that Luscko was provided his full commissions on sales generated.  Furthermore, Luscko has not shown any evidence that Southern knew at the time it made those representations that it did not intend to fulfill its word."  (Def. Br. at 22.)

The Court finds that there is no evidence in the record upon which a reasonable jury could find that Defendants did not intend to keep their word to Luscko that he would succeed at Southern.  The uncontroverted evidence shows that the transition period following Southern's acquisition of Regal was very difficult for all the Regal salespeople who joined Southern.   As example, Abby Hoffman, the principal of Regal who joined Southern as a salesperson after the sale, testified that "it was a bad transition for Regal and for Southern.  All the salesmen were extremely unhappy, deliveries were late, including myself, deliveries were late.  It was a nightmare.  It was truly a nightmare."  (Hoffman Dep. at 25.) She explained that Regal's customers "couldn't get ahold of people in sales" and stated that she personally "lost a lot of business in this sale."  (Hoffman Dep. at 25-26.)  Similarly, Hill testified that he "was aware that during the Regal transition there were problems with customers in general.  So it wasn't limited to Mr. Luscko and it wasn't limited to Abby Hoffman.  There were a group of issues affecting four manufacturing facilities of ours and affecting most of the salespeople working out of those manufacturing facilities."  (Hill Dep. at 44.)

The Court does not find Plaintiff's comparison to McConkey v. Aon Corp., 354 N.J. Super. 25 (App. Div. 2002) compelling.  In McConkey, the appellate division held that a fraudulent inducement claim should proceed to trial where a company allegedly told an employee

-11-

**NOT FOR PUBLICATION**

it was recruiting that it was not engaged in any discussions to sell the company.  The Court noted

that the company's proxy statement and contemporaneous board minutes showed that the

company's representations were false, and that a jury could rely on this evidence to find that the

plaintiffs gave misrepresentations about the current state of the company.  By contrast, here

Plaintiff points to no evidence showing that Defendants did not want him to succeed at Southern

or have a smooth transition.

Plaintiff speculates that Southern wanted him to fail based on the difficulties that

he experienced after Southern acquired Regal.   But this speculation is not sufficient to survive

summary judgment absent any evidence to support it.  Plaintiff does not point to any evidence to

counter the evidence presented by Defendants that all Regal salespeople experienced great

difficulties after joining Southern, and he does not point to any evidence showing that

Defendants intended for him to fail.  Because Plaintiff does not point to any evidence to support

his theory, his fraud in the inducement of a contract claim cannot survive summary judgment.

The Court dismisses this claim with prejudice.

## II.     Count Two:  Constructive Discharge

### A.     Legal Standard

Claims for constructive discharge by an at-will employee must be based upon

alleged violations of a statutory right or other public policy.  Shepherd v. Hunterdon Dev. Ctr.,

336 N.J. Super. 395, 421 (App. Div. 2001).  See also Gallo v. Princeton Univ., 281 N.J. Super.

134, 149 (1995) (noting that the plaintiff "had no basis for a claim of constructive discharge

unless his involuntary termination would have violated anti-discrimination laws or public

NOT FOR PUBLICATION

policy"). To prevail upon a constructive discharge claim, a plaintiff must show that an employer knowingly permitted working conditions that are "so intolerable that a reasonable person subject to them would resign." <u>Muench v. Twp. of Haddon</u>, 255 N.J. Super. 288, 302 (App. Div. 1992). An employee "has the obligation to do what is necessary and reasonable to remain employed rather than simply quit." <u>Shepherd</u>, 336 N.J. Super. at 402.

    B.    <u>Analysis</u>

       Plaintiff predicates his constructive discharge claim on an allegation that Defendants violated New Jersey's unreasonable wage law. (Pl. Opp. at 30). The New Jersey unreasonable wage law states: "The employment of an employee in any occupation in this State at an oppressive and unreasonable wage is hereby declared to be contrary to public policy and any contract, agreement, or understanding for or in relation to such employment shall be void." N.J.S.A. § 34:11-56a3. Plaintiff argues, citing <u>Winslow v. Corporate Express</u>, 364 N.J. Super. 128, 135 (App. Div. 2003), that New Jersey courts "recognize a private right of action to vindicate a wage claim, the definition of which includes commissions." (Pl. Opp. at 30.) Plaintiff contends:

> [O]bjectively it was intolerable for plaintiff, a salesman paid strictly by commissions, to remain employed when the accounts that he had built and sustained over many years at Regal were destroyed within six months; and he had no prospect for recovering them. He was working 40 hours per week, or 2,000 hours per year or more including his travel. His commission statements had been withheld from him. His draw had been cut. As of March of 2006, that draw was negative. His efforts to salvage his customers' orders had proven futile over many months. Southern had turned away his attempts to develop and originate his new business. The office to which he was required to report had been moved far away from his home. He was even accused of dishonesty. Defendants . . . do not explain how Luscko could have been expected to earn a living if he stayed at Southern. Plaintiff would not have been able to advance his own expenses within a few weeks of his resignation. To stay at

NOT FOR PUBLICATION

>Southern would have amounted to the acceptance of an unreasonable and opporessive wage.  Plaintiff did suffer a constructive discharge.

Pl. Opp. Br. at 30-31.

Defendants counter that the unreasonable wage statute relied upon by Plaintiff exempts "outside salesman" from its coverage.  See N.J.S.A. § 34:11-56(a)(4) ("The wage rates fixed in this section shall not be applicable to . . . persons employed as outside salesmen as such terms shall be defined and delimited in regulations adopted by the commissioner.").  Defendants note that, although this specific statute does not define "outside saleman," the New Jersey Administrative Code defines an "outside sales person" in the context of exemptions from the overtime wage laws as someone:

>(1) Who is employed for the purpose of and who is customarily and regularly engaged away from his or her employer's place or places of business in
>
>(i) Making sales; or
>
>(ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
>
>(2) Whose hours of work of a nature other than that described in (a)(1) above do not exceed 20 percent of hours worked in the workweek; provided, that work performed incidental to and in conjunction with the outside sales person's own personal sales or solicitations, including incidental deliveries and collection, shall be regarded as exempt work.

N.J.A.C. § 12:56-7.4(a).  Defendants argue that this same definition should apply in the context of New Jersey's minimum wage law.  They argue that this definition covers Luscko and prevents him from relying upon the minimum wage law as a foundation for his constructive discharge claim.  (Def. Reply Br. at 7-8.)  Defendants also argue that Plaintiff has failed to present any evidence upon which a reasonable jury could find his working conditions were "so intolerable"

-14-

NOT FOR PUBLICATION

that a reasonable person would need to leave, or that Plaintiff did what was "necessary and reasonable" to remain employed.  (Def. Br. at 23-24.)

        The Court finds that Defendant's unreasonable wage claim must be dismissed. The unreasonable wage statute relied upon by Plaintiff does not cover outside salespeople such as Luscko.  See § 12:56-1.1(a) ("The purpose of this subchapter is to establish rules to effectuate N.J.S.A. 34:11-56a et seq., the New Jersey State Wage and Hour Law (Act)); § 12:56-7.4(a) (defining an "outside sales person").[3]  In addition, the Court finds that Luscko has not presented evidence upon which a reasonable jury could find that his employer knowingly permitted working conditions "so intolerable" that a reasonable person in Luscko's shoes would resign.  On the contrary, the evidence in the record shows that the transition after Southern acquired Regal was difficult for all Regal salespeople, and that other Regal salespeople also suffered a sharp decline in sales revenues and were unhappy after Southern acquired their company.  See Hoffman Dep. at 25-26 (testifying that, after the acquisition, "all the salesmen were extremely unhappy" and that she personally "lost a lot of business" after the sale).[4]  There is no evidence

_____

[3]      Although Subchapter 7, in which an "outside sales person" is defined, is entitled "Exemptions from Overtime," the Court finds that the same definition applies to New Jersey's minimum wage law, N.J.S.A. § 34:11-56(a)(4).  No exclusion says that this definition would not apply to the minimum wage law, and it is sensible that the same definition of "outside sales person" applies in both the overtime and minimum wage law contexts.

[4]      Defendant also argues that Plaintiff cannot base his constructive discharge claim upon New Jersey's unreasonable wage statute because Plaintiff did not raise an alleged violation of that statute in his complaint or during discovery.  (Plaintiff alleges in his Complaint that his income dropped very sharply, but does not refer to the unreasonable wage statute.  See Compl. ¶ 25 ("Plaintiff estimates that he lost 90% of his commission income as a result of Southern's deliberate scheme to deny him sales support.").)  The Court reminds the parties that a plaintiff "may not amend a complaint through arguments in his brief in opposition to a motion for

-15-

NOT FOR PUBLICATION

that any salespeople other than Luscko left Southern at the time of his departure.  This

undermines Luscko's claim that any reasonable person would have done so.

   Lastly, the Court agrees with Defendant that Plaintiff's citation to <u>Winslow</u> is not

persuasive because the wage payment statute at issue there was N.J.S.A. § 34:11-4.6(b), which

prohibits an employer from changing the way an employee's wages are calculated without giving

advance notice to the employee.  That is a different statute from the minimum wage statute

Plaintiff alleges was violated, N.J.S.A. 34:11-56a4, which specifically exempts outside

salespeople from its coverage.

   The Court dismisses Plaintiff's claim for constructive discharge with prejudice.

## III. Count Three:  Breach of Contract

  A. <u>Legal Standard</u>

   To prevail on a breach of contract claim under New Jersey law, a plaintiff must

prove four elements: "(1) a valid contract existed between plaintiff and defendant; (2)

[defendant] breached the contract; (3) [plaintiff] performed its obligations under the contract; and

(4) [plaintiff] was damaged as a result of [defendant's] breach."  <u>Video Pipeline, Inc. v. Buena</u>

<u>Vista Home Entm't, Inc.</u>, 275 F. Supp. 2d 543, 566 (D.N.J. 2003) (citing <u>Coyle v. Englander's</u>,

199 N.J. Super. 212, 223 (App. Div. 1985)).

---

summary judgment."  <u>Bell v. City of Philadelphia</u>, 275 Fed Appx. 157, 160 (3d Cir. 2008).  The
proper procedure is for a plaintiff to amend his pleadings pursuant to Rule 15 of the Federal
Rules of Civil Procedure.  <u>Id</u>.  Here, however, this issue is immaterial, because the Court
dismisses Plaintiff's constructive discharge claim even assuming it was properly plead.

NOT FOR PUBLICATION

B.    <u>Analysis</u>

Plaintiff argues that Defendants breached the Agreement because "Southern obliterated Luscko's ability to enjoy the fruits of his employment contract, not by a legitimate exercise of discretion, but by a complete refusal to support Luscko's efforts to sell products to his former Regal customers.  Southern admits that it underestimated the difficulty of the transition, favored its own customer base and mishandled plaintiffs' customers' orders.  Separately, Luscko contends that he did not receive his proper commissions on certain accounts, which were converted to house accounts or not paid at all.  Southern breached Luscko's Employment Agreement.  This not even a close question."  (Pl. Opp. at 33.)

Defendants counter that Plaintiff's breach of contract claim cannot survive summary judgment because Plaintiff has no evidence to support his contention that he did not receive a five percent commission on certain accounts, whereas Defendants point to evidence showing that he did.  Defendants state that Plaintiff fails to refer to any other contractual provisions in the Agreement that were allegedly violated, precluding Plaintiff from advancing his breach of contract claim.

As a general rule, a plaintiff must refer to citations in the record which support his contentions that material questions of fact exist.  <u>See</u> <u>Celotex</u>, 477 U.S. at 324; Fed. R. Civ. P. 56(e).  Here, Plaintiff has failed to point to any evidence in the record showing that he did not receive a five percent commission on certain accounts.  By contrast, Defendants have pointed to evidence in the record showing that he was paid a five percent commission rate on those accounts.  <u>See</u> Def. Br. at 13-14 (showing that Luscko's total sales from the closing date in July

-17-

NOT FOR PUBLICATION

2005 until the end of the year were $1,791,427 and he received compensation from Southern in

the amount of $96,802, resulting in an overpayment of $7,231; and that his sales while at

Southern in 2006 totaled $497,811 and he received compensation of $19,048, resulting in an

underpayment of $3,769; and calculating the net result is that Luscko received an overpayment of

$3,462).  Plaintiff in his Opposition Brief does not challenge these calculations or reference any

evidence reflecting that he was not paid his contractually agreed-upon commission rates.

      Plaintiff's allegation that Southern "obliterated Luscko's ability to enjoy the fruits

of his employment contract" is an insufficient allegation to advance this claim beyond the

summary judgment stage.  As discussed, there is no evidence in the record upon which a

reasonable jury could find that Southern intentionally targeted Luscko or wanted him to fail.  The

record shows that the transition upon Southern's acquisition of Regal was difficult for all Regal

salespeople, and there is no evidence that Southern intended for this to be so.  <u>See, e.g.</u>, Hoffman

Dep. at 25 ("[I]t was a bad transition for Regal and for Southern.  All the salesmen were

extremely unhappy, deliveries were late, including myself, deliveries were late.  It was a

nightmare.  It was truly a nightmare.").  Absent evidence upon which a reasonable jury could find

that a particular contractual provision was breached or that Southern specifically wanted Luscko

to lose his business, the breach of contract claim cannot proceed to trial.

**IV.**     **Count Four:  Breach of Implied Covenants of Good Faith and Fear Dealing**

    A.    <u>Legal Standard</u>

      "[I]n every contract there is an implied covenant that neither party shall do

anything which will have the effect of destroying or injuring the right of the other party to receive

**NOT FOR PUBLICATION**

the fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing." <u>Sons of Thunder, Inc. v. Borden, Inc.</u>, 148 N.J. 396, 420 (1997) (internal quotation marks omitted). "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." <u>Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.</u>, 228 F.3d 275, 288 (3d Cir. 2000). To establish a claim for breach of this covenant, the plaintiff must demonstrate that the defendants acted in bath faith or with an improper motive. <u>Seidenberg v. Summit Bank</u>, 348 N.J. Super. 243, 261 (App. Div. 2002). New Jersey court have admonished that care should be exercised in making this determination because "an unduly expansive version of bad faith... 'could become an all-embracing statement of the parties' obligations under contract law, imposing unintended obligations upon parties and destroying the mutual benefits created by legally binding agreements.'" <u>Id.</u> at 262 (quoting <u>Northview Motors, Inc. v. Chrysler Motors Corp.</u>, 227 F.3d 78, 92 (3d Cir. 2000)).

      B.    <u>Analysis</u>

        As discussed, Plaintiff has not advanced any evidence upon which a reasonable jury could find that Southern targeted him or acted in bad faith trying to make him lose his business. All the evidence supports Defendants' assertions that the transition upon Southern's acquisition of Regal was difficult for all Regal salespeople, and no evidence shows that Southern wanted this to be so. As a result, Plaintiff's claim for breach of an implied covenant of good faith and fair dealing must be dismissed.

NOT FOR PUBLICATION

**V.     Count Five:  Age Discrimination in Violation of New Jersey Law**

      A.     <u>Legal Standard</u>

      In <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), the United States Supreme Court established a burden shifting method of proof to be utilized in the analysis of Title VII discrimination cases.  Analyses of New Jersey Law Against Discrimination claims have utilized the same framework. See, e.g., <u>Erickson v. Marsh and McLennan Co.</u>, 117 N.J. 539, 549-550 (1990); <u>Peper v. Princeton University Board of Trustees</u>, 77 N.J. 55, 81-83 (1978). Under this framework, the burden initially rests with the plaintiff to establish a prima facie case of discrimination.  <u>McDonnell Douglas</u>, 411 U.S. at 802. To establish a prima facie case of discriminatory discharge, the plaintiff must prove:  (1) that she is a member of a protected class; (2) that she was qualified for her position and that she performed her job at a level that met her employer's legitimate expectations; (3) that she was nevertheless fired; and (4) that non-members of the protected class were treated more favorably. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Roebuck v. Drexel University</u>, 852 F.2d 715 (3d Cir. 1988); <u>Ditzel v. University of Medicine and Dentistry of New Jersey</u>, 962 F.Supp. 595, 602-603 (D.N.J. 1997).  If the plaintiff establishes a prima facie case, the burden shifts to the employer defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. <u>McDonnell Douglas</u>, 411 U.S. at 802. The defendant need not prove that its proffered reason actually motivated the behavior because throughout the burden shifting model, the burden of proving intentional discrimination remains with the plaintiff employee.  <u>Martinez v. National Broad. Co.</u>, 877 F. Supp. 219, 228 (D.N.J. 1994). The defendant has no burden to prove good cause or failure, but need only "introduce

**NOT FOR PUBLICATION**

evidence to create a factual issue concerning the existence of a legitimate justification for the action." McKenna v. Pacific Rail Svc., 817 F. Supp. 498, 512 (D.N.J. 1993). Once the defendant employer sets out a legitimate non-discriminatory reason for the adverse employment action, the burden of persuasion shifts back to the plaintiff employee to show that the defendant's proffered reason is merely a pretext for discrimination. McDonnell Douglas, 411 U.S. at 804.

However, the United States Supreme Court in Gross v. FBL Fins. Servs., Inc., 129 S. Ct. 2343 (2009) "cast doubt on the application of McDonnel Douglass to ADEA claims." Frankel v. Peake, No. 07-3539, 2009 U.S. Dist. LEXIS 97532, at *10 (Oct. 20, 2009). The Gross court stated that it "has not definitively decided whether the evidentiary framework of [McDonnell Douglas] utilized in Title VII cases is appropriate in the ADEA context." Gross, 129 S. Ct. at 2352. As other district courts have observed, "the Court appeared to end the use of burden-shifting in ADEA cases by stating that the plaintiff retains the burden of persuasion. The Court then clarified that this burden of persuasion 'is the same in alleged mixed-motives cases as in any other ADEA disparate-treatment action. . .. [a] plaintiff must prove by preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision.'" Frankel, 2009 U.S. Dist. LEXIS 97532, at *9-10 (quoting Gross, 129 S. Ct. at 2351).

The majority of courts in this district attempting to reconcile the McDonnell Douglas framework with the Gross analysis "continue to apply the McDonnell Douglas framework at the summary judgment stage while also recognizing that at trial the plaintiff bears the burden of persuasion to prove that discrimination was the but for cause of the adverse

NOT FOR PUBLICATION

employment action." Ferruggia v. Sharp Elec. Corp., No. 05-5992, 2009 U.S. Dist. LEXIS

75464, at *3 (D.N.J. Aug. 25, 2009) (listing cases). See also Frankel, at *11 ("After careful

consideration of the Gross opinion and its interaction with the Third Circuit's ADEA precedent,

this seems like the most reasonable application of Gross on summary judgment.").

    B.    <u>Analysis</u>

        In his Complaint, Plaintiff alleges that he "suffered from an unfair and illegal

disparate impact of Southern's acquisition and employment practices.  As an older worker at a

high rate of compensation, he was denied sales support so that younger workers earning less

could sell to his former Regal customers."  (Compl. ¶ 53.)  Plaintiff also alleges that he "suffered

disparate treatment at the hands of Defendants, who were previously on record before the Regal

acquisition as refusing to pay Plaintiff a five percent commission.  Instead, defendants wanted

Plaintiff to accept a lower commission rate based on Southern's 'index.'  Defendants later

promised to pay Plaintiff his customary rate as part of the Regal acquisition."  (Compl. ¶ 54.)

Plaintiff alleged, upon "information and belief," that "Southern has replaced Plaintiff with

younger sales staff at lower commission rates to sell to Regal's former customers."  (Compl. ¶

56.)

        In his Opposition Brief, Plaintiff claims that "Hill questioned whether Luscko

thought that he was getting too old for his position."  (Opp. Br. at 35 (citing Plaintiff's Answer to

Defendant's interrogatory number 21).)  Plaintiff argues that "direct evidence of a discriminatory

purpose (minimally, a nod of the head) shifts the burden of persuasion to show that it would have

taken the same adverse employment action without consideration of the proscribed factor, in this

**NOT FOR PUBLICATION**

case Luscko's age."  (Opp. Br. at 35 (citing <u>McDevitt v. Bill Good Builders</u>, 175 N.J. 519, 527

(2003).)  Plaintiff further argues that at "the very least, this case calls for a relaxation of the

<u>McDonnell-Douglas</u> test concerning the replacement of the older employee by someone younger

when there is a 'mixed motive' for the adverse action."  (Opp. at 35 (citing <u>Kapossy v. McGraw-</u>

<u>Hill, Inc.</u>, 921 F. Supp. 234 (D.N.J. 1996).)

   The Court finds that Plaintiff has failed to set forth a prima facie case of age

discrimination.  As discussed, Plaintiff has failed to point to any evidence in the record upon

which a reasonable jury could find that he was constructively discharged or effectively

terminated.  As such, he cannot show any challenged employment decision as required by the

third prong of the <u>McDonnell Douglas</u> test.

   In addition, Plaintiff cannot satisfy the fourth prong of the <u>McDonnell Douglas</u>

test, which New Jersey courts interpret to require a showing that a "challenged employment

decision . . . took place under circumstances that give rise to an inference of unlawful

discrimination."  <u>Williams v. Pemberton Twp. Public Schools</u>, 323 N.J. Super. 490, 502 (1989).

Plaintiff has failed to point to any evidence in the record showing that his age played any role in

regard to any aspect of his employment at Southern.

**NOT FOR PUBLICATION**

## <u>CONCLUSION</u>

The Court grants Defendants' summary judgment motion and dismisses the remaining claims in Plaintiff's complaint with prejudice.  The Court denies Plaintiff's request to reinstate Count Five.


December 23, 2009                                    **<u>s/William H. Walls</u>**
                                                                    United States Senior District Judge

-24-